**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GLOBAL MANUFACTURING ASSOCIATES, INC., | CASE NO. 1:08-CV-2528 |
| | JUDGE SOLOMON OLIVER |
| Plaintiff, | MAGISTRATE JUDGE NANCY A. VECCHIARELLI |
| v. | |
| BUCKWING PRODUCTS, INC., et al., | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This matter is before the undersigned Magistrate Judge on referral from the District Court Judge for ruling on the defendant Thomas Turczyn's ("Turczyn") Rule 11 Motion Against Plaintiff and its Counsel of Record, which was filed March 3, 2009. (Doc. #42) ("Rule 11 Motion") Plaintiff filed its Response in Opposition to Defendant Thomas Turczyn's Rule 11 Motion Against Plaintiff and it Counsel of Record on March 17, 2009. (Doc. # 45) ("Plaintiff's Response") For the reasons stated below, the Court recommends defendant's Rule 11 Motion be DENIED.

**I. Factual Background**

In September 2005, plaintiff, Global Manufacturing Associates, Inc., ("Global") and defendant, Buckwing Products, Inc., ("Buckwing") began negotiating the terms of an exclusive supplier agreement ("agreement") whereby Global would manufacture hunting

decoys for Buckwing. (first amended complaint ("complaint") ¶ 12) The law firm of Vorys, Sater, Seymour, and Pease LLP ("Vorys") assisted Global in the preparation of the agreement. ( complaint ¶ 13) On or about July 29, 2005, Vorys prepared the first draft of the agreement which did not contain a noncompetition provision restricting Global from manufacturing a similar product to that produced for Buckwing upon termination of the agreement. (complaint¶ 14-15)[1] Throughout July and August 2005, multiple drafts of the agreement were prepared by Vorys and sent back and forth between Buckwing and Global. (complaint ¶ 16) On or about September 26, 2005, Vorys submitted a sixth version of the agreement to Buckwing. (complaint ¶ 20) On September 27, 2005, Buckwing made changes to the agreement, including the insertion of a noncompetition provision, and returned it to Global. (complaint ¶ 21-23)  Global reviewed  Buckwing's proposed changes and returned a marked up copy of the agreement to Buckwing which indicated that Global would not agree to the terms of a noncompetition provision proposed by Buckwing. (complaint ¶¶ 22, 24) Buckwing accepted the revisions proposed by Global and agreed to memorialize a final agreement. (complaint ¶ 25) Global contacted Buckwing three times to advise that Global had not received the final copy of the agreement.  On or about November 22, 2005 Global received a copy of the agreement signed by Glenn Lindaman, an officer of Buckwing.  (complaint ¶¶ 26-28) Based on the assumption that the agreement signed by Lindaman was a memorialization of the previously agreed to terms, Global, through its president, signed the agreement.  (complaint ¶ 29)

---

[1] The plaintiff, perhaps erroneously, alleges the first draft of the agreement was prepared prior to the time it alleges negotiations began.

From November 2005 until March 2008, things appeared to go smoothly between Global and Buckwing. However, in March 2008, Buckwing began to fall behind in its payments to Global. Global contacted Buckwing about the payments; and on July 17, 2008 Buckwing informed Global that it believed Global violated the agreement by manufacturing similar products for another company. (complaint ¶¶ 30-31) Global was confused by Buckwing's allegation so it contacted Vorys and asked counsel to review the agreement it had signed in November 2005. At that time, Vorys discovered the agreement signed by Global contained the noncompetition provision that Global had previously rejected. (complaint ¶ 32)

## II Procedural History

Based upon the foregoing, Global filed a three count complaint against Buckwing; Tom Turczyn, an attorney and officer of Buckwing; Glenn Lindaman, an officer of Buckwing; and Susquehanna Bank. Global alleged fraud against Buckwing, Turczyn, and Lindaman, and sought recision of the contract between Global and Buckwing. Global also sought a declaratory judgment against Susquehanna Bank[2].

On November 17, 2009, Turczyn filed a motion to dismiss complaint. (Doc # 8) On December 8, 2008, Global filed its first amended complaint. (Doc. # 14) On December 12, 2008, Turczyn filed a motion to dismiss the first amended complaint. (Doc. # 17).

Also on December 12, 2009, the Magistrate Judge held a case management

---

[2]Plaintiff's claims against Susquehanna Bank are not relevant to the pending motion, and, therefore, are not discussed.

conference.[3] At the conference, the parties discussed whether mediation would be appropriate. The issue presented for mediation involved Global's potential purchase of the hunting duck decoy patent in which Susquehanna Bank had a security interest. Because Turczyn had no ownership interest in the patent, the parties and Court agreed that Turzyn would be excused from participating in the mediation.

After the case management conference, Turczyn's counsel sent an e-mail to Global's counsel informing him that he was drafting a Rule 11 motion against plaintiff, its counsel, and its counsel's firm based on filing a frivolous compliant against Turczyn. (Plaintiff's Response p. 5) On December 15, 2008, Turczyn served plaintiff with the proposed Rule 11 motion. On December, 17, 2008, plaintiff's counsel responded to Turczyn's e-mail and proposed motion. (Plaintiff's Response p. 6) In his response, plaintiff's counsel stated that Turczyn had mischaracterized counsel's statements regarding his reasons for naming Turzyn a defendant. He also asked Turczyn to refrain from filing his Rule 11 motion until Global responds to defendants' motions to dismiss, as they raise many of the same issues as the proposed Rule 11 motion. (Plaintiff's Response Ex. B)

On January 5, 2009, plaintiff filed its brief in opposition to Turczyn's motion to dismiss. (Doc. #29) In his brief in opposition, plaintiff proposed to again amend his complaint to include a civil conspiracy claim against Turczyn, Lindaman, and Buckwing. Plaintiff briefed this proposed claim because the Court had informed plaintiff that when it

---

[3]At the conference, the Court was informed that defendant Buckwing Products was out of business, and had not entered an appearance in the case. Also, defendant Lindaman had filed a notice of filing bankruptcy on December 1, 2008. (Doc. # 11)

responded to defendant's motion to dismiss, it should explain how it would cure any defect in its pleading. On January 13, 2009, Turczyn filed a reply brief in support of his motion to dismiss. (Doc. #33)

On January 15, 2009, the Court held a mediation conference between plaintiff and defendant Susquehanna Bank. Also present was Greg Samaras, the original duck hunting decoy patent holder. At that time, plaintiff and Susquehanna Bank reached a settlement in principal subject to certain conditions being met by February 9, 2009. The proposed settlement would have disposed of the entire case. The Court ordered a telephone conference for February 10, 2009, and ordered all additional matters in the case stayed until after the February 10, 2009 conference. (Doc. # 36) At the February 10, conference it became apparent that the parties had new and unresolved issues that prevented immediate settlement. The Court continued the telephone conference to February 20, 2009. On February 20, 2009, the Court held a telephone conference, and among other things, ordered plaintiff to file a statement by February 26, 2009 stating whether settlement had reached an impasse. (Doc. # 38) On February 26, plaintiff informed the Court that settlement had reached an impasse. (Doc. # 39)

On March 3, 2009, defendant filed his Rule 11 Motion. On March 11, 2009, plaintiff field a notice of dismissal under Fed. R. Civ. P. 41(a) (1) voluntarily dismissing all defendants without prejudice. (Doc. # 44) On March 17, 2009, plaintiff filed his response to defendants Rule 11 Motion. (Doc. #45)

### III. Standard

Fed. R. Civ. P. Rule 11 provides in part:

(b) **Representations to Court**. By presenting to the court (whether by signing, filing,

5

submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . .

" '[T]he reasonable inquiry under Rule 11 is not a one-time obligation. [T]he plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate to modify them to conform to Rule 11.'" *Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996 ) (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335-336 (6th Cir. 1988).

In the Sixth Circuit, the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances. *Runfola*, 88 F.3d at 372 (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). "This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." *Hebron,* 858 F.2d at 335. "Under Rule 11, sanctions may be imposed if a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Id.*

In addition, pursuant to the Rule 11 Advisory Committee Notes, "[even though it is

6

the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client." Fed. R. Civ. P. 11 Advisory Committee's Note (citing *Browning Debenture Holders' Comm. v. DATA Corp*, 560 F.2d 1078 (2d Cir. 1977). In *Browning,* the Second Circuit held that a court may impose an award of costs or attorneys' fees against individual plaintiffs upon a showing that the plaintiffs were personally aware of, or otherwise responsible for, the procedural action instituted in bad faith. *Browning,* 560 F.2d at 1089.[4]

### IV. Analysis

Defendant claims plaintiff violated Rule 11 for the following reasons quoted below:

1. Global's claims against Turczyn are presented for an improper purpose, such as to harass, cause unnecessary delay and/or needlessly increase the cost of the litigation. Indeed, counsel for Global admitted at the recent Case Management Conference that the primary reason that Turczyn was involved in the case was because of his "deep pockets;"

2. Global's claims are not warranted by existing law nor does Global attempt to extend, modify or reverse existing law. Global's claims are legally deficient for all the reasons set forth in Turczyn's Motion to Dismiss, and all such reasons follow long-standing Ohio precedent;

3. Global's factual contentions have no evidentiary support. Instead, Global impermissibly attempts to mask the lack of factual allegations against Turczyn through broad allegations which combine the alleged acts of another Defendant to create the impression that Turczyn engaged in the alleged fraud; and

4. Global continues to assert fraud even after it was brought to Global's attention that its allegations of fraud are not supported by the evidence, lack common sense and are not supported by Ohio law.

(Rule 11 Motion pp. 3-4)

---

[4]Turczyn has not alleged any facts to support a Rule 11 claim against Global individually.

Plaintiff denies these allegations.  First, plaintiff's counsel  denies he stated that Turczyn was in the case because he has deep pockets.  Second, plaintiff argues any defect there may have been in the first amended complaint was addressed in his response to Turczyn's motion to dismiss.[5]  Third, plaintiff argues its factual allegations are supported by uncontradicted evidence.  Fourth, plaintiff argues that dismissing his case shortly after settlement reached an impasse was reasonable under the circumstances.  (Plaintiff's Response pp. 9-14)

The Court agrees that plaintiff's claims against defendant Turczyn are not well founded. This Court has some question about whether plaintiff's counsel asserted legal theories without thoroughly researching them.  Indeed, the Court was prepared to issue its Report and Recommendation that Turczyn's motion to dismiss plaintiff's first amended complaint be granted when plaintiff filed its notice of dismissal.  Nevertheless, this Court does not find that plaintiff's counsel's acted so unreasonably that he violated Rule 11.

Defendant argues that plaintiff asserted his claim against Turczyn for an improper purpose, that is, because he had deep pockets.  Plaintiff's counsel, in denying this allegation, points to his December 17, 2008 letter to Turczyn's counsel wherein he stated:

> I never suggested that we filed this suit solely because Mr. Turczyn had "deep pockets".  In fact, I specifically stated at the CMC that I did not believe that Mr. Turczyn had the financial wherewithal to pay the entire amount of the judgment

---

[5]At a conference among the parties the Court informed plaintiff that its response to defendant's motion to dismiss should explain how it would cure any defects in its complaint.  Plaintiff proposed to amend its complaint against Turczyn to a include a claim for civil conspiracy.

8

>we intend on obtaining in this suit. Therefore, any suggestion that I filed this action against Mr. Turczyn simply because he had "deep pockets" is absolutely untrue and a mischaracterization of my statements during the Case Management Conference.

(Plaintiff's Response Ex. B) Plaintiff claims that what he said at the case management conference was that given Lindaman's bankruptcy and Buckwing's default, it appeared Turczyn was the only financially viable defendant. He also explained that he was not aware of Lindaman's or Buckwing's situation until after he filed his complaint. (Plaintiff's Response p.6) Plaintiff's counsel also argues that he named Turczyn as a defendant because Turczyn drafted the agreement at issue, not because he has deep pockets. Additionally, plaintiff's counsel states that by agreeing to excuse Turczyn from participating in the mediation conference and related conferences, he did everything possible to limit Turczyn's expenses.

There is no transcript of the case management conference, and this Court has no clear or certain recollection about any remarks regarding Turczyn's financial ability to pay, or his "deep pockets". Thus, Turczyn's allegation concerning this issue is not supported by the record in this case.

The remainder of defendant's claims are problematic. As stated, the Court was prepared to issue its Report and Recommendation that defendant's motion to dismiss be granted when plaintiff dismissed his complaint. Plaintiff had failed to state a claim against Turczyn in his first amended complaint because it failed to allege with particularity the circumstances of any alleged fraud perpetrated by Turczyn. Plaintiff could not cure this defect by alleging that Turczyn, Lindaman, and Buckwing had engaged in a civil conspiracy as plaintiff proposed in his brief in opposition to defendant's motion to dismiss.

In considering plaintiff's proposed civil conspiracy claim, the Court is troubled by what appeared to be plaintiff's failure to thoroughly research the law. In particular, plaintiff was either unaware of, or ignored the fact that an agent or an officer of a corporation is immune from suit for civil conspiracy when he is acting in the scope of his corporate position. *Scanlon v. Stofer & Bros. Co.* 1989 WL 69400 (Ohio App. 8 Dist. *See also Doherty v. American Motors Corporations*, 728 F.2d 334, 338 (6th Cir. 1984) ([T]here is no conspiracy if the conspiratorial conduct is essentially a single act by a single corporation acting through its own directors, officers and employees, each acting within the scope of their employment.)

The only place plaintiff's counsel addressed this issue was in his response to Turczyn's Rule 11 Motion wherein he states, "As an act of fraud is obviously outside the scope of one's employment, the rule excluding a cause of action against employees of a corporation for civil conspiracy does not apply...." (Plaintiff's Opposition to Rule 11 Motion p. 13) This unsupported statement again exhibits counsel's somewhat cavalier attitude toward the law. An agent may commit fraud while acting within the scope of his employment. *See generally, Buckeye Union Insurance Co. V. SCOA Industries*, 1975 WL 18114 (Ohio App. 10 Dist.)

Plaintiff's counsel's approach to the facts was also a bit cavalier insofar as it was based largely on speculation. For example, Global states, "[T]he non-competition clause was sophisticated and technical, <u>suggesting</u> that a lawyer (such as Turczyn) was involved in drafting it. ...<u>One can only assume </u>that Turczyn, who happens to be a lawyer as well as an officer of Buckwing at the time the language was inserted, <u>must have been involved </u>due to the sophistication of the added clauses." (Brief in Opposition p. 9) These allegations

10

suggest that plaintiff did not, in fact, know whether Turczyn was involved in drafting the changes to the agreement.

In the Sixth Circuit, the test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances. *Runfola*, 88 F.3d at 372 (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). When determining what is reasonable, the court should consider, among other things, whether the pleading or motion is based on a plausible view of the law. *See* Fed. R. Civ. P. 11 Advisory Committee's Note. In reaching its decision the Court should, "avoid the wisdom of hindsight and should test the signers conduct by what was reasonable at the time." *Fifth Third Bank v. Boswell*, 125 F.R.D. 460,462 (S.D. Ohio 1989) citing *INVST Financial Group v. Chem Nuclear Systems*, 815 F.2d 391, 401 (6th Cir. 1987) While the Court agrees that plaintiff ultimately failed to state a claim against Turczyn, it does not agree that a reasonable attorney under circumstances could not have believed his claim was based on a plausible, although mistaken, view of the law. Turczyn was an officer of Buckwing and its attorney. Under these circumstances, it is not unreasonable for plaintiff to allege that Turczyn was involved in what plaintiff believed was fraudulent conduct regarding the drafting of the agreement. Similarly, it was not unreasonable for plaintiff to attempt to state a claim for civil conspiracy when plaintiff became aware that he could not state a claim for fraud against Turczyn individually. Although both of these claims, ultimately, would have failed for failure to sufficiently state a claim, an insufficient pleading alone is not an adequate ground for imposing Rule 11 sanctions.

Additionally, as recognized by the Sixth Circuit in *Runfola*, 88 F. 3d at 373-374, the gravamen of Rule 11 is not in the filing of a claim that eventually proves to be meritless, but

rather in persistence in pursing that claim after the pleader has or should have become aware that it lacks merit. Plaintiff did not persist in pursuing its claims beyond a reasonable point. Although plaintiff did not dismiss his claims against Turczyn immediately upon receiving Turczyn's proposed Rule 11 Motion, he did dismiss it shortly after settlement reached impasse. Given the status of the settlement negotiations when Turczyn served his proposed Rule 11 motion, it was not unreasonable for plaintiff's counsel to wait to see if the case could be quickly resolved. Additionally, Turczyn's only filings between the time he served his proposed Rule 11 motion and the time plaintiff dismissed its complaint, were his initial disclosures, his reply brief in support of his motion to dismiss, and his Rule 11 motion. Thus, Turczyn was not required to incur a great deal of additional expense because plaintiff waited for settlement negotiations to conclude before dismissing its case. Plaintiff's relatively prompt dismissal of the claims against Turczyn weighs against the imposition of Rule 11 sanctions.

## IV. CONCLUSION

For the foregoing reasons, Defendant Thomas Turczyn's Rule 11 Motion Against Plaintiff and its Counsel of Record, should be DENIED.

s/ *Nancy A. Vecchiarelli*
Magistrate Judge United States

Date: April 16, 2009

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. An*, **474 U.S. 140 (1985),** *reh'g denied,* **474 U.S.1111 (1986).**